Argued May 6, decided May 27, 1913.

# PARROTT *v.* STEWART.*

(132 Pac. 523.)

**Dedication—Acts Constituting—Intention.**

1. An intention of the owner, as evidenced by his acts and the acts which he permits or encourages, is controlling on the issue of dedication.

**Dedication—Highways—Acts Constituting—Presumptions.**

2. A dedication of land alongside a highway and used by the public, but so situated as to indicate that it does not form a part of the highway, cannot be deemed dedicated without strong evidence of an intent on the part of the owner to dedicate.

**Dedication—Highways—Parol Dedication.**

3. A dedication of land for a highway by parol must be evidenced by some act evincing a clear intent to dedicate.

---

*On the question of the right of one to testify as to his intent with respect to dedication, see note in 23 L. R. A. (N. S.) 398.—REPORTER.

Dedication—Highways—Parol Dedication.

4.  The acts and declarations of an owner do not establish a dedication of land for a highway unless they are deliberate, unequivocal, and decisive, manifesting a positive intent to dedicate.

>   [As to what amounts to a dedication of highway, see note in 57 Am. St. Rep. 749.]

Dedication—Highways—Evidence.

5.  Evidence *held* not to show a dedication of land for a public highway.

Highways—Prescription.

6.  A highway cannot be established by prescription unless there has been an actual adverse use, general, uninterrupted for the statutory period under a claim of right, and a mere user of a highway unaccompanied by acts showing a use under a claim of right is insufficient.

Highways—Prescription—Evidence.

7.  Where the use of land by those traveling on it was not under a claim of right adverse to the owner, who merely permitted travel for convenience, the use did not establish a highway by prescription, though continuing for the statutory period.

>   [As to whether adverse possession of highway creates title by prescription, see notes in 32 Am. Dec. 719; 14 Am. St. Rep. 278; 76 Am. St. Rep. 492.]

Highways—Prescription—Receipt of Taxes.

8.  The receipt by a city of taxes paid by the owner of land is inconsistent with the claim of the city to hold the land by prescription for a public highway.

>   [As to the essentials of adverse possession, see notes in 28 Am. St. Rep. 158; 88 Am. St. Rep. 701.]

Dedication—Interests Conveyed—Right of Way.

9.  A conveyance of a tract with a right of way over a tract retained by the grantor creates a right of way appurtenant to the tract conveyed which passes by a subsequent conveyance of the tract without specific mention.

>   [As to public or private right of way over land conveyed in the aspect of encumbrance, see note in 125 Am. St. Rep. 454.]

From Baker: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE BEAN.

Plaintiff, O. J. Parrott, brought this suit against John M. Stewart and R. L. Stewart, heirs of Barbara Stewart, deceased, and the Standard Oil Company, a corporation of California, and the Sumpter Valley Railway Company, a corporation, in which the City

of Baker intervened, to foreclose a certificate of delinquency issued to the plaintiff for the nonpayment of certain taxes assessed against the property described in the complaint, which is situated within the corporate limits of the City of Baker, and consists of a strip of land lying at the west end of Court Avenue, 66 feet in width, 209 feet in length on the north side, and 167 feet on the south side. If Court Avenue, which is one of the principal thoroughfares of the city, were extended westerly to the right of way of the O.-W. R. & N. Company, it would include the strip of contested land and also a strip lying immediately to the south, 14 feet in width. The premises in controversy have been uninclosed, and, together with the adjoining tracts belonging to other parties, have been accessible for public travel. This suit involves the question of whether or not the tract in dispute is a part of Court Avenue. The defendant city intervened in the suit and pleaded three separate defenses: First, a dedication of the property by John Stewart and wife (former owners), as a part of Court Avenue; second, conduct on the part of John Stewart and his grantees by reason of which they are estopped from claiming that the land in question is not a street; and, third, a conveyance to the Standard Oil Company, dated November 1, 1896, of a right of way over the land, and a conveyance of the same by it to the city on the 24th day of April, 1912, the latter being made after the commencement of this suit. The record title to the real estate described in the complaint is in John M. and R. L. Stewart, heirs of Barbara Stewart. The state, county, and city taxes for the year 1908 were regularly levied and assessed upon the property. John Stewart originally owned a body of land including this tract, and land immediately on the north and south. In 1882, Stewart platted the tract on the north as ''Stewart's

Addition,'' with the south line of the addition even
with the north line of Court Avenue, and adjacent to
the land in dispute, which was not shown on the plat as
a street.   In 1889, Stewart sold and conveyed the land
on the south to Geo. Cates, describing the same by
metes and bounds, without reference to Court Avenue.
Stewart never conveyed any part of his land by de-
scribing the same with reference to the above street.
Of late years a warehouse abutting on the south of
the tract near the railroad and a residence have stood
upon the Cates lot.   The depot grounds are located
on the north side of the strip.   After the O.-W. R. &
N. Company's railroad was built at this place in 1884,
a warehouse was maintained for several years on the
west side of the railroad, and freight from the interior
was hauled over a crossing of the railway track and
strip of land.   This warehouse was burned some 20
years ago and the railroad crossing was abandoned.
Immediately across the track lies private property.
Later, other streets in the vicinity were opened across
the railroad right of way, and tracks were laid by the
Sumpter Valley Railway Company by the side of those
of the O.-W. R. & N. Company, making ten in all.   The
tract in dispute has been open from the west end of
Court Avenue to the railroad right of way since 1884,
so that anyone desiring could cross the same, as is the
custom to use any vacant lot in the outskirts of such
a city.

It is in evidence on behalf of defendant that there
has been more or less public travel over the land in-
volved, since the eighties; the line of travel not follow-
ing exactly the strip of land claimed as a street, but
verging to the north and passing over a portion of
Stewart's Addition and the depot grounds.   There is
no means of ingress to or egress from the warehouse
and dwelling on the south, except over the 14-foot strip

65 Or.—17

mentioned. The city widened Court Avenue 14 feet on the south side, making the street that much more in width than the tract in suit, and paved the same to this lot, but not beyond. The plat of Stewart's Addition shows the lots and blocks thereon and also the alleys dedicated to the public. The lots face upon an alley and not upon the strip claimed as a street. For many years the premises were regularly assessed and levied upon for taxes, the same being paid by Stewart during his lifetime, and by Mrs. Stewart after his death. The city assessed the property for storm sewer assessments, but constructed no sewer, made no improvements thereon, and assumed no authority or dominion over the same.

The pleadings and record show that on November 1, 1896, John Stewart sold and conveyed to the Standard Oil Company a tract of land across the railroad tracks and west of the premises in controversy, and at that time granted an easement to the company across the contested land, in connection with the premises conveyed, to be used by the company as a means of ingress to and egress from the property across the railroad; that the Standard Oil Company conveyed the premises to J. W. Stuchell, but in so doing failed to specially mention any right of way or easement, although it did convey the appurtenances; that Stuchell later conveyed the premises to the Sumpter Valley Railway Company in the same manner and form as they had been conveyed to him, omitting any mention of the right of way or easement over the Stewart land in controversy herein. All the defendants except the city of Baker defaulted. The Circuit Court found that the city had no right to the land for use as a street.

AFFIRMED.

For appellant, the City of Baker, there was a brief over the names of *Messrs. McColloch & McColloch,*

with an oral argument by *Mr. Claude McColloch,* City Attorney.

For respondent there was a brief over the names of *Mr. Charles P. Murphy* and *Mr. John L. Rand,* with an oral argument by *Mr. Murphy.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. In determining as to a dedication, the intention of the owner is the controlling factor; but the law does not seek for his undisclosed intention. It acts upon his intention as evidenced by his acts and the circumstances which he permits or encourages: 3 Dillon, Mun. Corp. (5 ed.), § 1079; *Kuck* v. *Wakefield,* 58 Or. 549 (115 Pac. 428); *Hogue* v. *City of Albina,* 20 Or. 182 (25 Pac. 386, 10 L. R. A. 673).

2. Where the situation of land is such as to indicate that it does not form part of the highway, although it may be alongside of the way and be used by the public, no dedication can be presumed without strong evidence of an intent on the part of the owner to devote the land to the use of the public: Elliott, Roads & Streets (2 ed.), § 167.

3. In order to constitute a dedication by parol there must be some act proved evincing a clear intention to dedicate the land to the public use: *Lownsdale* v. *City of Portland,* 1 Or. 381, 405 (Fed. Cas. No. 8578); *Lewis* v. *City of Portland,* 25 Or. 133, 155 (35 Pac. 256, 22 L. R. A. 736, 42 Am. St. Rep. 772).

4. The owner's acts and declarations should be deliberate, unequivocal, and decisive, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use. If they be equivocal and do not clearly and plainly indicate his intention to permanently abandon the property to public use, they are insufficient to establish a dedication:

*Hogue* v. *City of Albina,* 20 Or. 186, 187 (25 Pac. 386, 10 L. R. A. 673).

5. The evidence does not disclose that John Stewart ever made any dedication of the land to the public use. His acts, such as granting a right of way to the Standard Oil Company (which indicates the reason why he did not sell the land with the Cates tract), and the payment of taxes, negative an intent to abandon the real property. There is no evidence tending to show that the strip was intended by anyone as a permanent street, or that the property was accepted by the public as a street. The contention of defendant that there has been a dedication cannot be upheld.

6. The defendant city next claims the right to the use of the land as a street by prescription or adverse use by the public continuously for the statutory period of limitation. To establish a highway by prescription there must be an actual adverse public use, general, uninterrupted, continued for the period of the statute of limitations under a claim of right. Where this is established for the statutory period, the right is deemed perfected and a permanent one: *Wood* v. *Hurd,* 34 N. J. Law, 87; *Marion* v. *Skillman,* 127 Ind. 130 (26 N. E. 676, 11 L. R. A. 55, 58). It was held in *Smith* v. *Gardner,* 12 Or. 226 (6 Pac. 771, 53 Am. Rep. 342), that mere user of a highway, however long-continued and uninterrupted by the public, is not sufficient to give a right in the public; but such user must be accompanied by acts, such as working the road, keeping it up by the public, repairing it or removing obstructions, etc., showing the use to have been made under a claim of right, and not merely by permission of the land owner. A permissive use of a way by certain portions of the community constitutes a license and not a dedication, and is ordinarily something that may be revoked. And it was held in *Bayard* v. *Standard Oil*

*Co.,* 38 Or. 438, 445 (63 Pac. 614), that user by the general public, under a claim of right, adversely, and not by mere permission of the owner, for the period prescribed by the statute as a limitation beyond which actions for the recovery of real property cannot be maintained, will establish an easement in the public.

The adverse use which will give title by prescription to an easement is substantially the same in quality and characteristics as the adverse possession which will give title to real estate. As in the case of adverse possession, it must be continued for a long period; it must be adverse, under a claim of right, exclusive, continuous, uninterrupted and with the knowledge and acquiescence of the owner of the estate out of which the easement is claimed: 22 Am. & Eng. Ency. of Law (2 ed.) 1192; *Coburn* v. *San Mateo County* (C. C.), 75 Fed. 520; *Shellhouse* v. *State,* 110 Ind. 509 (11 N. E. 484); *City of Topeka* v. *Cowee,* 48 Kan. 345 (29 Pac. 560, 563). Where the use is merely permissive, and not adverse, there is no basis on which a right of way by prescription may rest: Elliott (2 ed.), § 175; *Engle* v. *Hunt,* 50 Neb. 358 (69 N. W. 970–972); *Town of Brushy Mound* v. *McClintock,* 150 Ill. 129 (36 N. E. 976, 977).

7. The use made of the property in question by those traveling over it does not appear from the evidence to have been at any time either adverse to the owner or under a claim of right. It does not appear that an action could have been maintained at any time by Stewart or his successors in interest for any act of the city, or of anyone else, relating to the land. But, rather, the use appears as a neighborly concession. Anyone was allowed to travel over the tract for convenience, as is often the case with a vacant lot, as it did no harm, and the use was apparently permissive in its very nature, and would not set the statute run-

ning: *Altschul* v. *O'Neill*, 35 Or. 202, 211 (58 Pac. 95);
*Trump* v. *McDonnell*, 120 Ala. 200 (24 South. 353).

8. The receipt by the city of taxes paid by the owner
is inconsistent with the claim of the city to have held
the same land, on which the taxes were paid, by pre-
scription during the same years it received taxes
thereon: Elliott (2 ed.), § 167; *Illinois Cent. R. Co.* v.
*City of Bloomington*, 167 Ill. 9 (47 N. E. 318); *Niles*
v. *City of Los Angeles*, 125 Cal. 572 (58 Pac. 190);
*Hesse* v. *Strode*, 10 Idaho, 250 (77 Pac. 634).

All that would have been necessary for Stewart or
subsequent owners to have done to have changed the
condition as to travel would have been to inclose the
land. This would not have conflicted with any author-
ity exercised or claimed by the municipal authorities.
The city has not made out a case coming within the
well-defined rules governing a prescriptive easement
as announced and adhered to by this court. This dis-
poses of the second contention of defendant.

9. As to the conveyance by Stewart and wife to the
Standard Oil Company of a tract of land west of the
railroad together with a right of way over the land
in dispute to be used in connection therewith, when the
Standard Oil Company conveyed the lot west of the
railroad, together with its appurtenances, to Stuchell
on July 12, 1909, which deed was duly recorded, this
right of way, being appurtenant to the tract described
in the conveyance, passed to the grantee without spe-
cific mention: *George* v. *Cox*, 114 Mass. 382, 387;
*Spaulding* v. *Abbot*, 55 N. H. 423; *Brown* v. *Thissell*,
60 Mass. (6 Cush.) 254, 258. Therefore the deed exe-
cuted by the Standard Oil Company to the city of
Baker on April 24, 1912, describing the right of way
over the land in controversy, conveyed no right thereto,
as that company then had nothing to convey, and the
city obtained no benefit by virtue of such deed.

The decree of the lower court was right, and it is
affirmed.       Affirmed.