92 So.2d 638 (1957)
F.J. LEVERING, Jr.; Marjorie R. Levering, his wife; Anna P. Levering, a widow; William A. Wegmann and Leada A. Wegmann, his wife, Appellants,
v.
CITY OF TARPON SPRINGS, a Municipal Corporation, Appellee.
Supreme Court of Florida, Special Division A.
February 13, 1957.
Thompson & Cooper, Clearwater, for F.J. Levering, Jr., Marjorie R. Levering, his wife, Anna P. Levering, a widow.
Marshall & Rives, Clearwater, for William A. Wegmann and Leada A. Wegmann, appellants.
James M. Stevens, Tarpon Springs, for appellee.
THORNAL, Justice.
Appellants, who were defendants below, seek reversal of a final decree quieting the title to certain real estate in the appellee City of Tarpon Springs, which was plaintiff below.
Despite several interesting incidental questions, the one which settles the controversy is whether the record sustains the conclusion of the Chancellor that appellee-City had acquired title to the land in dispute by adverse possession without color of title.
Prior to 1926 and for many years thereafter, the Levering family owned the record title to a parcel of land described as Tract 146 of Tampa and Tarpon Springs Land Company plat. The City of Tarpon Springs held the record legal title to Tract 147 immediately north of Tract 146 in the same plat. Each of these tracts was 300 feet in width north and south by about 922 feet in length east and west. By various conveyances the record title to Tract 146 reached appellants Wegmann in 1955. It appears that in 1926 the City of Tarpon Springs constructed a municipal waterworks plant on the south half of Tract 147 and the north half of Tract 146. It is admitted that the original entry by the City upon Tract 146 was by mistake. The error was not discovered until September, 1955, when appellant Wegmann had a survey made covering Tract 146. Upon discovery of the error the City filed a complaint in equity asking that its alleged title to the north half of Tract 146 be quieted on the basis of its continuous adverse possession *639 for more than seven years without color of title.
There is no dispute over the fact that from 1926 through 1954 the City levied, assessed and collected municipal ad valorem taxes against Tract 146. The taxes were paid by the record title owners. In 1927 the City published an official map prepared by its Tax Assessor showing its water plant to be located entirely upon Tract 147. The same map revealed no encroachment whatever by the water plant on Tract 146. As late as July, 1954, the City published an official zoning map showing its water plant on Tract 147. No encroachment by the plant on Tract 146 was indicated. On the contrary, Tract 146 was zoned for single family residences by the zoning ordinance. The record suggests that since about 1933 the water plant was used merely as a stand-by source of water. Pictures of the area reveal that at the present time the property is generally run-down and in a dilapidated condition.
The Chancellor was of the view that under this factual situation the City had established its adverse user for a period of time sufficient to result in title to the City by adverse possession. The City's title was quieted by the final decree. Reversal of this decree is now sought.
Appellants contend that a municipal corporation cannot acquire title by adverse possession in view of the requirements of our Constitution to the effect that private property can be acquired for public use only upon the payment of just compensation. It is further contended that the factual situation does not justify the conclusion that the City's possession of the land has been sufficiently hostile and adverse to justify the application of our adverse possession statute.
The City, of course, attempts to support the decree of the Chancellor with the contention that although the original entry was by mistake it immediately ripened into a hostile adverse claim that continued for more than seven years and resulted in the acquisition of title by adverse user without color of title.
Although the rule appears to be generally accepted that a municipality, like an individual, may acquire title to land by adverse possession, we deem it unnecessary to burden this opinion with any discussion of that proposition. McQuillan on Municipal Corporations, 3rd ed., Sec. 28.15.
The cases are legion to the effect that to justify the conclusion that a title has been acquired by adverse user, such user must be open, notorious, hostile and adverse. Our own statute requires this. Section 95.18, Florida Statutes, F.S.A. See also Section 2936, R.G.S., which was in effect in 1926. Our many decisions dealing with adverse possession adhere to the same proposition. Assuming for purposes of this case that a Florida municipality can acquire title by adverse user, we revert to a consideration of the facts to ascertain whether there was a sufficiency of hostile adverse use to justify the entry of the decree under attack.
As pointed out under our factual statement, this record shows that instead of claiming hostilely and adversely, the City of Tarpon Springs has consistently recognized the record title of the appellant owners. This was done by the repeated annual assessment, levy and collection of municipal ad valorem taxes. We are not here confronted with a situation where the municipality has the record title to a parcel of land and through the error of some employee assesses taxes against its own land. In the instant case the municipality not only admits its original entry by mistake but likewise concedes that it annually recognized its mistake by assessing and collecting the taxes. Certainly the assessment of taxes and the collection thereof from the record private owner is completely and totally inconsistent with any hostile or adverse claim of ownership by *640 the City. We are not aware of any method by which a governmental agency can recognize private ownership more emphatically and conclusively than by assessing and collecting ad valorem taxes.
In Parrott v. Stewart, 65 Or. 254, 132 P. 523, the Supreme Court of Oregon pointed out that the receipt of taxes by a city from the record owner is inconsistent with the claim of the city that it holds the land involved by adverse user during the period for which taxes are paid.
In Hesse v. Strode, 10 Idaho 250, 77 P. 634, the Supreme Court of Idaho held that where a municipality had built a fire engine house in such fashion that it encroached upon the adjoining land of a private owner but had annually levied and collected taxes against the privately owned parcel, its conduct estopped it from claiming adverse possession. It was contended in that case that the City had acquired title to the extent of the encroachment by adverse user. To the same effect see Illinois Cent. R. Co. v. City of Bloomington, 167 Ill. 9, 47 N.E. 318; and 1 F.L.P., Adverse Possession, Secs. 20 and 23.
In the instant case in addition to the consistent levy and collection of taxes, the municipality as early as 1927 published an official map showing Tract 146 to be free of any encroachment by the water plant. As late as 1954 the official zoning map of the City showed the same situation and classified appellants' property for single family residence usage.
In view of all of these circumstances we are necessarily led to the conclusion that the City is not now in a position to claim open, notorious, hostile, adverse user without color of title for a period of time necessary to acquire title by adverse possession.
The decree quieting the title in the City is, therefore, reversed and the cause remanded for further proceedings not inconsistent herewith.
Reversed and remanded.
TERRELL, C.J., and ROBERTS and DREW, JJ., concur.