# SECURITY STATE BANK OF FLASHER, NORTH DAKOTA, a Corporation, Appellant, v. CORA D. WERNICK and Stanley Wernick, Respondent.

(199 N. W. 948.)

**Estoppel — proof must be clear — cannot be created by inference.**

In an equitable action to enforce a chattel lien upon certain crops where defendant made certain representations to plaintiff to the effect that the land would be farmed by the mortgagor during the following year, and where, in fact, defendant purchased the land and farmed it himself and thereby plaintiff suffered prejudice through the renewal of the mortgagor's indebtedness and lien, it is *held*, for reasons stated in the opinion, that the findings and conclusions of the trial court that no estoppel has been created as against the defendant should be sustained.

Opinion filed July 19, 1924.

Appeal and Error, 4 C. J. § 2722 p. 775 n. 33 New; § 2870 p. 900 n. 98. Estoppel, 21 C. J. § 269 p. 1252 n. 93, p. 1253 n. 94 New; § 270 p. 1253 n. 98; § 272 p. 1254 n. 23.

In District Court, Grant County, *Berry, J.*

Equitable action to enforce a chattel mortgage upon certain crops.

From a judgment in defendant's favor plaintiff has appealed and has demanded a trial de novo.

Affirmed.

*Scott Cameron,* for appellant.

To establish an estoppel in pais it must be shown: First, that the person sought to be estopped has made an admission or done an act, with the intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, inconsistent with the evidence he proposes to give, *or the title he proposes to set up.* Second, the other party has acted upon or has been influenced by such act. Third, that the party will be prejudiced by allowing the truth of the admission to be proved. Parliamin v. Young, 2 Dak. 175, 16 Cyc. 722; Vallency v. Hunt, 20 N. D. 590.

Note.—Evidence required to establish estoppel, see 10 R. C. L. 845; 2 R. C. L. Supp. 1090.

*I. N. Steen* (*Sullivan, Hanley & Sullivan*, of counsel), for respondent.

An omission to be an estoppel must be with reference to some duty devolving upon a person sought to be estopped.

It is an essential element of an equitable estoppel that the acts, representations or silence relied on to create the estoppel must have been wilfully intended to lead the party setting up the estoppel to act upon them. 21 C. J. 1120; Kubu v. Kabes, 172 N. W. 496.

There can be no estoppel where statements are made honestly. 21 C. J. 1122.

Growing crops are fructus industriales and in the absence of any reservation or exception, either parol or otherwise, of a crop of grain growing on land at the time of the execution of a deed thereof, the crop passes to the purchaser under the deed. Bjornson v. Rostad, 137 N. W. 568; Malsbary v. Jacobus, 130 N. W. 424.

Before a chattel mortgage on crops to be grown in the future attaches, such crops must come into existence and be acquired by the mortgagor. McMaster v. Emerson, 80 N. W. 389.

A chattel mortgage on crops to be thereafter sown and raised on the land of the mortgagor constitutes no lien on the land, and will attach only to such interest as the mortgagor has in the crops when they came into being. Simmons v. Anderson, 47 N. W. 52.

If a mortgagee or other lien holder stands by while another acquires an interest in the property and fails to make known or assert his lien, he will be afterward estopped to do so to the prejudice of that other. 21 C. J. 1167.

Acts done or knowledge acquired subsequent to the transactions out of which the estoppel is claimed to arise can have no bearing upon the question. The representations or conduct relied on to raise the estoppel must have been concurrent with or anterior to the action which they are alleged to have influenced. 21 C. J. 1132, ¶ 133; Loff v. Gilbert, 166 N. W. 810.

The act must be the immediate or proximate result of the conduct of representations which must be such as the party claiming the estoppel had a right to rely on. White v. Graybill, 169 N. W. 135; Fryer v. Harker, 121 N. W. 526; 21 C. J. 1122, 1129; 81 Pac. 1053;

Lincoln v. McLaughlin, 112 N. W. 363; Major v. Brewster, 112 N. W. 490.

As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct or representations of the party sought to be estopped. It is a general rule essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy but should have also been without convenient or ready means of acquiring such knowledge. 21 C. J. 1129.

## Statement.

BRONSON, Ch. J. This is an equitable action to enforce a chattel mortgage. Plaintiff has appealed from a judgment of dismissal and has demanded a trial de novo. The facts are:—For several years defendant Cora Wernick farmed a section of land in Grant county. Theretofore her husband, prior to his death, farmed this land. For several years defendant Stanley Wernick worked as an employee of defendant Cora Wernick, and for her husband prior to his death in 1916. in farming this land. Plaintiff is a banking corporation. In 1919 Mrs. Wernick was indebted to plaintiff bank upon two promissory notes for the sum of about $3,900. The notes fell due on November 1st, 1920. These notes were secured by a chattel mortgage upon horses, cattle, machinery, and upon the crop to be raised upon the land farmed. The land was owned by the father of defendant Stanley Wernick. The father died in April, 1918. His estate proceeded in the course of probate. In the fall of 1919, pursuant to the testimony of plaintiff's cashier, defendant Stanley Wernick came to the bank, possibly a month prior to the renewal of the mortgage, and inquired concerning the bank's intentions about Mrs. Wernick's indebtedness. He advised the bank that Mrs. Wernick requested him to come in and find out what the bank's intentions were. The cashier informed him that they wanted to do what was right and if Mrs. Wernick wanted to give any security the bank would gladly renew the paper. The defendant Stanley Wernick stated, "You know, I have been helping her for the last three years. She is going to put in a fairly good crop this coming year and she will no doubt pay out with that kind of a crop." Upon such in-

ducements, pursuant to testimony of the cashier, a new mortgage was taken from Mrs. Wernick in December, 1919. The new mortgage covered the same chattel security as well as the crop on the same land which were covered by previous mortgages. Two new notes were executed: One, for $2,500; another, for $1,458; both due November 1st, 1920. On August 27th, 1919, Mrs. Wernick had paid $305 on the previous notes. The new chattel mortgage was signed by Mrs. Wernick at the farm; defendant Stanley Wernick was not present. Pursuant to the cashier's testimony, the understanding was that she would give a crop mortgage the same as in prior years and also that she intended to farm the section of land.

Pursuant to Stanley Wernick's testimony, he went to the bank at her request to advise the bank that she was behind in the interest and could not make it up, and to find out whether they intended to foreclose. Plaintiff inquired whether she could secure any signers and he advised the bank that he did not know of anybody. He did not tell plaintiff that she was going to put in a good crop and that she should be able to pay out. Pursuant to Mrs. Wernick's testimony, on December 9th, 1919, plaintiff's cashier came to her place; he made out the mortgages; she advised him that the land was to be sold in April, 1920, and that whoever bought the land would want possession; the cashier advised her that whoever bought the land should come in and he would withdraw the mortgage upon the crop.

On February 14th, 1920, an application for an order for license to sell the land involved was made in the county court. On March 31st, 1920, such order was made. Some time in April, 1920, the land was sold to defendant Stanley Wernick for about $13,000, but one Schick, his brother-in-law, was interested in the purchase.

Pursuant to defendant Stanley's testimony, he bought or secured seed wheat for the crop of 1920; some of this seed wheat was secured through the enforcement of a labor lien upon seed wheat possessed by Mrs. Wernick. Mrs. Wernick was indebted to him for wages amounting to about $1,300; he made an arrangement with her to use her horses and machinery for farming the land in 1920; he did use her horses and machinery, and crop the land in 1920; for a time she remained on the farm with him; then she went to Illinois about May 20th, 1920, and, later, after three or four months, returned and stayed

with him on the farm; in the fall of 1920 he harvested the crop and hauled it to the elevator; about May 18th, 1920, about the time when the order was made confirming the sale of the land to him, he informed the bank that he had purchased this land.

Pursuant to the cashier's testimony, plaintiff first knew in the fall of 1920 that Stanley Wernick was farming this land and claimed the grain through ownership thereof. Schick, Stanley's brother-in-law, testified that in the fall of 1919 he had a conversation with plaintiff's cashier to the effect that the bank could not make collection upon this indebtedness from the land which belonged to the estate of her father-in-law, and further advised the cashier that defendant Schick was figuring on purchasing the land and that if defendant, Stanley, could not handle it he would take at least half of it, which, in fact, he did later. Although this testimony to this effect was stricken out, nevertheless, the wife of Mr. Schick subsequently testified substantially to the same effect. Some testimony was adduced to the effect that Stanley Wernick, in the spring of 1920, listed the land for hail insurance in the name of defendant Cora Wernick and afterwards withdrew such lands, likewise in her name. He explains this testimony by stating that he so did pursuant to request of the assessor and with relation to the time of an assessment. Otherwise testimony is adduced by plaintiff to the effect that by reason of defendant Stanley's representations its security greatly depreciated through the extension of time granted, and that plaintiff suffered considerable loss thereby. Also evidence was adduced to the effect that in the fall of 1920 plaintiff foreclosed upon the horses, cattle and machinery and secured payment of the smaller note and the application of about $93 upon the larger note through such foreclosure. Mrs. Wernick made no appearance and is in default.

The trial court, among other things, found that Stanley Wernick, in the fall of 1919, made the statement to plaintiff's cashier as testified by the cashier; that plaintiff and its officials relied upon the statements and representations made by defendant Stanley Wernick, renewed the notes and took a new chattel mortgage; that when the new chattel mortgage upon the crop was taken, plaintiff had actual notice that defendant Cora Wernick did not own the land and did not have any interest therein; that then it was stated to plaintiff that if defendant Cora Wernick did no farming in the year of 1920 the said

mortgage upon the crop, so taken, should be of no effect and should be cancelled; that plaintiff had no notice of any claim of Stanley Wernick to the crop until after it had been harvested in 1920, and that defendants did not communicate to plaintiff that any person other than Mrs. Wernick claimed or had any interest in the crops. As conclusions the court determined that the representations made by defendant Stanley were not such as would entitle plaintiff to rely upon the same as an estoppel against defendant Stanley Wernick from purchasing the land and from thereafter cropping the same in his own behalf or from treating the mortgage as of no effect upon such crops; that defendant Cora Wernick was a tenant in sufferance and that plaintiff had full knowledge thereof when the mortgage was taken; that defendant Stanley Wernick purchased all of the land prior to the seeding operations in 1920 and became the owner in fee thereof, and of the crops raised thereupon. Judgment accordingly was ordered to be entered against Mrs. Wernick for the balance due upon the notes, and for dismissal of the action as against Stanley Wernick.

It is the contention of the plaintiff that the record affirmatively shows the creation of an estoppel against defendant which in equity should be enforced so as to preserve a lien for plaintiff covering the crops raised upon the land in 1920.

## Opinion.

In their briefs the parties have discussed at considerable length the evidence and questions of law concerning the creation of an estoppel upon such evidence. It is well settled that proof of an estoppel must be clear. An estoppel will not be created by inference. Haugen v. Skjervheim, 13 N. D. 622, 102 N. W. 311. We are clearly of the opinion that the findings of fact as made by the trial court do not warrant conclusions of law such as to create an estoppel. We are satisfied, upon the record, that the question of whether an estoppel was created was largely a question of fact. We have reviewed the entire record. Upon such review we are satisfied that the findings and conclusions of the trial court should be sustained. Although the presumption does not obtain concerning the findings of a trial court as in law actions, nevertheless, the trial court, in this equitable action, possessed

a superior opportunity, with the parties before it, to weigh and pass upon the evidence adduced. Drivdahl v. International Harvester Co. 43 N. D. 284, 174 N. W. 817; Merchants Nat. Bank v. Collard, 33 N. D. 556, 565, 566, 157 N. W. 488. In this regard one of the questions of fact involved is whether plaintiff knew that Mrs. Wernick had no ownership nor interest in the land involved in 1920 when the mortgage was taken, and whether statement was communicated to plaintiff when such mortgage was taken that such mortgages should be considered of no effect if defendant Cora Wernick did not farm such land during the year 1920. In such respect the trial court found adversely to plaintiff. We are not inclined to disturb his findings in that regard. It accordingly follows that the judgment should be and is affirmed with costs.

CHRISTIANSON, JOHNSON, NUESSLE, and BIRDZELL, JJ., concur.